Magistrate Judge J. Richard Creatura

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH TURREY,<br><br>Defendant. | NO. CR21-5385BHS<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE |

This Court should deny Turrey's request for release because Turrey remains a danger to the community due to his long-standing sexual abuse of his children, which he was able to hide from those closest to him for years.

## I. INTRODUCTION

Defendant Joseph Turrey is charged with sexually assaulting his daughters over a seven-year-period on the Lower Elwha Klallam Reservation. On November 17, 2021, the grand jury returned an indictment charging Turrey, an enrolled member of the Lower Elwha Klallam Tribe, with two counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2241(c), and 2246(2)(D), and one count of Sexual Abuse of Minor in violation of 18 U.S.C. §§ 2243(a), and 2246(2)(C). On March 9, 2022, the grand jury returned a superseding indictment charging Turrey with four counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2241(c), and 2246(2)(A), (C), and

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 1
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(D), one count of Abusive Sexual Contact in violation of 18 U.S.C. §§ 2244(a)(5), and 2246(3), and two counts of Sexual Abuse of Minor in violation of 18 U.S.C. §§ 2243(a), and 2246(2)(A) and (B). Count 1 charges Turrey with aggravated sexual abuse against MV1 and Counts 2 through 7 charge him with abuse against MV2.

## II. BACKGROUND AND SUMMARY OF EVIDENCE

Between 2008 and 2016, Turrey sexually abused three of his daughters. Turrey is an enrolled member of the Lower Elwha Klallam Reservation, a former tribal council member, and a former Chief of Police for the Hoh Reservation. Turrey and his wife (Brenda Turrey) share nine children, including twins they adopted who are currently 14 years old. In 2016, Turrey moved out of the family home over Super Bowl Sunday weekend following the revelation he had been having a secret affair for over a year. Although separated, Brenda and Turrey managed to maintain a cordial relationship and he was actively involved in the family's life until his children disclosed the abuse in 2021.

On Saturday, September 25, 2021, Kelsi Turrey and her younger sister MV3 (who is currently 21 years old and is an uncharged victim), were watching a movie at Kelsi's house and started discussing family dynamics. During this conversation, MV3 disclosed to Kelsi that their father sexually abused her when she was twelve years old. During her FBI interview, MV3 described sharing a two-bed hotel room with her father and two of her siblings while on Squaxin Island for canoe races. One night when MV3 shared a bed with Turrey, MV3 awoke to find Turrey grabbing and squeezing her vagina while he made "happy noises." The incident lasted a few minutes. Afterwards, Turrey told her "I'm really sorry baby. You are beautiful. Don't let anyone ever do that to you."

MV3 did not disclose the abuse to anyone at the time but told her mother after Turrey moved out in 2016. Her mother confronted Turrey, who admitted to touching MV3. Ultimately the abuse was not reported to law enforcement due to Mrs. Turrey's

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 2
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

concern about what MV3 would have to go through if it were reported.[1] During her law enforcement interview, MV3 said that although she and Turrey never talked about the abuse, he unexpectedly apologized to her several years ago when the two were driving into town.

During her disclosure to Kelsi, MV3 mentioned she believed that Turrey also abused their 19-year-old sister (MV2). Kelsi and MV3 communicated with MV2 over text and phone that night before driving to her boyfriend's house to speak with her. MV2 confirmed that Turrey sexually abused her from the age of seven until just before she turned fourteen. During this contact with her sisters, MV2 was sobbing hysterically and threw up.

During her FBI interview, MV2 described the years of sexual abuse she endured, including both digital and penile rape, and oral sex. For the first few years, Turrey fondled and digitally penetrated MV2 (Counts 2-3). Turrey also sexually abused MV2 during the same family outing to canoe races on Squaxin Island in which he sexually abused MV3. Eventually, the fondling and digital penetration evolved into oral sex and penile/vaginal intercourse. The first instance of penile rape occurred in 2012 at the Great Wolf Lodge during a family celebration for MV3's birthday. MV2 estimated at least seven to ten instances of vaginal rape at the family home on the Lower Elwha Klallam Reservation. During her forensic interviews, MV2 gave detailed accounts of specific instances of rape involving vagina and oral penetration (Counts 4, 6, and 7). She also described an instance where Turrey made her use her hand to masturbate him until he ejaculated one night in his bathroom (Count 5). Another sister corroborates seeing MV2 leaving the bathroom crying after this incident.

Occasionally, MV2 resisted her father's advances. When this happened, Turrey threatened to touch her younger sisters instead. MV2 recalled being ten-years-old the first time her father threatened to molest her younger sisters. Not wanting her sisters harmed,

---

[1] When Mrs. Turrey was a child she was the victim of sexual abuse that went through the court system, so she is keenly aware of the hardship that a court case can be on a child victim.

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 3
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

MV2 did what Turrey wanted. MV2 said the sexual abuse stopped when she was thirteen years old. MV2 described that Turrey would be "extra nice" during the rapes if he was sober but yelled and used force if intoxicated. MV2 described that she got special treatment and gifts from Turrey that she attributes to the abuse.

Following MV2's disclosure and despite Kelsi specifically asking her not to, their mother called Turrey and confronted him on Sunday (September 26). During their discussion, Turrey denied touching MV2, but admitted to touching MV3. After this confrontation, Turrey started phoning his children. The eldest son in the family had been made aware of the sexual abuse by Kelsi. He spoke with Turrey over the phone on Sunday and angrily confronted his father. Turrey admitted to his son that he touched MV3 but denied any contact with MV2.

That same day, Kelsi decided to speak with each of her younger sisters individually. During their conversation, 14-year-old MV1 disclosed to Kelsi that their father sexually assaulted her when she was six or seven years old. During a later forensic interview, MV1 described lying on a red blanket on her parents' bed watching television next to Turrey. As she lay there, Turrey he placed his hand inside of her underwear and started "feeling" her bare vagina. Turrey rubbed her stomach with one hand and touched her vagina with his other hand. Although Turrey did not penetrate her vagina, he did apply pressure to it during the incident. MV1 felt "terrified" and said the abuse made her feel "really bad."

After that September weekend, and notably after the disclosures, Mrs. Turrey initiated official divorce proceedings and the children moved in with Kelsi.

### III.     DISCUSSION

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, this Court must consider the nature and circumstances of the offense charged, the weight of the evidence, the defendant's history and characteristics, and the nature and seriousness of the danger posed by the defendant if released. 18 U.S.C. § 3142(g).

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 4
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

A. <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of this offense support detention. There is a presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community, based on the nature of the charges. 18 U.S.C. § 3142(e)(3)(A). Here the presumption is not only supported by the general nature of the charges, but also the specific facts of the case and the potential penalty that the defendant is facing. First it is important to note that the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (2008). Once a defendant introduces rebuttal evidence, the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant. *Id.*; *see also United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir.1985) (rejecting the "bursting bubble" approach).

In looking at the risk to the community, the defendant's alleged conduct is highly probative. Here, the defendant subjected three children, who he was trusted to protect and care for, to sexual abuse, including ongoing assaults on MV2 that lasted from roughly age seven to age thirteen. These assaults included vaginal, digital, and oral penetration. Turrey not only repeatedly raped MV2, but starting at age ten he kept her silence through threats that he would rape her younger sisters if she were to deny him. When MV2 was 10, her sisters would have been 5 and 6 years old.

The severity of the potential punishment in this case supports detention as well. Congress has decided that this type of case warrants a presumption of detention, as well as a 30 mandatory minimum sentence. Not even murder has a mandatory minimum, but Congress has said that the Court is to consider the nature of this offense in the most serious terms. Congress' determination is understandable, when the Court considers the defendant's conduct here and the harm that he has inflicted on these children for life.

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 5
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

### B. The Weight of the Evidence

The Court is required to ascribe the least weight to the strength of the evidence, among the four factors, when considering whether to release a defendant. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). The weight of the evidence nonetheless favors detention due to the detailed and credible disclosure by the victims and the defendant's subsequent admissions. The government's case is strong. The victims all give detailed, credible accounts of the sexual abuse and the observations of non-victim siblings corroborate that abuse. Additionally, Turrey has admitted to sexually abusing MV3 to Mrs. Turrey and their oldest son.

Turrey, in his Second Motion for Release and through the multiple delcarations of his friends' speculation, suggests to the Court that the victims' disclosures came about because of his divorce from Mrs. Turrey. Dkt. 45. But Mrs. Turrey, who has been legally separated from Mr. Turrey since the 2016 revelation of his ongoing affair, filed for divorce *after* the victims' disclosures in September of 2021. The speculation of Turrey's friends that Mrs. Turrey exercises a high level of control over the victims, two of whom are now adults, is also not borne out by the facts. The children now reside with a sister, not Mrs. Turrey, because Mrs. Turrey's relationship with her children has been fractured by these events as well.

The declarations attached to the Second Motion for Release do not weaken the Government's case. Child sexual abuse often happens in secret, away from the eyes of neighbors and acquaintances, and the power dynamics allow perpetrators to keep child victims silent. These dynamics are even more fraught when the abuser is a parent who the child loves and trusts. Observations that the victims still appeared to love the defendant as they grew up, despite what he did to them, are a reflection of those dynamics and an example of how adept Turrey is at keeping his victims compliant.

### C. The History and Characteristics of the Defendant

Turrey does not have criminal history and he has significant ties this community, however this is not dispositive for detention. The Ninth Circuit in *Hir* specifically

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 6
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

considered and rejected the idea that the government must present a record of violence or dangerous conduct in order to justify detaining a defendant on grounds of dangerousness. *Hir*, 517 F.3d at 1091. The Ninth Circuit relied solely on the facts of the case, which did not involve direct harm to victims as this case does, and found Hir dangerous despite his lack of criminal history, ties to the community, and a pretrial services report recommending detention.

Here, the positions of trust that Turrey has enjoyed act as a double-edged sword – they allow him to evade suspicion and make it even more difficult for victims to come forward. During the Squaxin Island Canoe Journeys, which he attended as an esteemed member of the tribal council, he sexually assaulted two of his daughters behind closed doors. During his years as a law enforcement officer, he was repeatedly raping his child in their home. His positions as a law enforcement officer and military veteran afford him trust and respect that cloak him in a presumption of trustworthiness in his community. The letters written on his behalf are evidence of that; Turrey's friends refuse to believe the allegations, though they have not heard any of the Government's evidence, because he is an esteemed member of the community with a law enforcement and military background. Because Turrey's community refuses recognize the risk that he poses to children, they will not be vigilant to keep the children in their community safe.

D. <u>The Nature and Seriousness of the Danger Posed by the Defendant</u>

The danger to the community here is of the most serious kind. Again, the Ninth Circuit in *Hir* confirms that this Court is to look to the facts of the underlying case to evaluate this factor. The Court is looking at what potential harm it is risking inflicting on the community by releasing the defendant. The defendant is alleged to have sexually abused and raped young children over a roughly seven-year period. The nature of harm here is the some of the most serious that this Court will see. This was not an isolated incident; the defendant repeatedly victimized multiple young children, with whom he had a position of trust over, and he used threats to ensure MV2's compliance.

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 7
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The defendant may claim he is somehow less dangerous because these acts occurred in some time ago. First, they did not stop because the defendant had a change of heart; they stopped because he moved out of the house in February 2016, so he no longer had unfettered access to the children, specifically MV2. The blind trust that the members of his community appear to place in him adds to Turrey's dangerousness, because the people who wrote those letters will not be vigorously watching over him. As many of them say, they would still trust him with their kids. That is the problem with ensuring the defendant does not have access to any other children- enforcement of any conditions is reliant on the defendant and those around him. Because the harm to any present or future victims is so great in this case the Court must be exceedingly vigilant, particularly when the community that Turrey will be released back into will not exercise that vigilance itself. This factor weighs heavily in favor of detention.

## IV. CONCLUSION

The Section 3142 factors justify detention in this case. Where there is a presumption of detention, the burden is on the defendant to show the Court that he is not a flight risk or risk to the community. The defendant's lack of criminal history and ties to the community are not sufficient to overcome the presumption in this case given the nature and circumstances of the offense and the nature and seriousness of the risk to the community.

//
//
//

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 8
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

For these reasons, the defendant must continue to be detained for the protection of the community and the United States respectfully requests the Court continue to detain the defendant pending resolution of these charges.

DATED this 11th day of April, 2021.

Respectfully submitted,

Nicholas W. Brown,
United States Attorney

*s/ Kristine L. Foerster*
Kristine L. Foerster
Assistant United States Attorney
United States Attorney's Office
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR RELEASE/ Turrey- 9
CR21-5385 BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800