The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH ANTHONY TURREY,

Defendant.

NO. CR21-5385

GOVERNMENT'S TRIAL BRIEF

## I. INTRODUCTION

Defendant Joseph Turrey is charged with sexually assaulting his daughters over a seven-year-period on the Lower Elwha Klallam Reservation. On November 17, 2021, the grand jury returned an indictment charging Turrey, an enrolled member of the Lower Elwha Klallam Tribe, with two counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2241(c), and 2246(2)(D), and one count of Sexual Abuse of Minor in violation of 18 U.S.C. §§ 2243(a), and 2246(2)(C). On March 9, 2022, the grand jury returned a superseding indictment charging Turrey with four counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2241(c) and 2246(2)(A), (C), and (D), one count of Abusive Sexual Contact in violation of 18 U.S.C. §§ 2244(a)(5) and 2246(3), and two counts of Sexual Abuse of a Minor in violation of 18 U.S.C. §§ 2243(a) and 2246(2)(A) and (B). On November 2, 2022, the grand jury returned the Second

Government's Trial Brief - 1
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Superseding Indictment, which added two counts of Aggravated Sexual Abuse of a Minor, in violation of 18 U.S.C. §§ 2241(c) and 2246(2)(A), (B).

Count 1 charges Turrey with aggravated sexual abuse of MV1 and Counts 2 through 9 charge him with abuse of MV2.  The counts are summarized in the table below:

| Count | Charge | Victim | Dates |
|-------|--------|--------|-------|
| 1 | Aggravated Sexual Abuse of a Minor | MV1 | January 25, 2013 – January 24, 2015 |
| 2 | Aggravated Sexual Abuse of a Minor | MV2 | August 23, 2008 – August 23, 2010 |
| 3 | Aggravated Sexual Abuse of a Minor | MV2 | August 23, 2008 – August 23, 2010 |
| 4 | Aggravated Sexual Abuse of a Minor | MV2 | April 1, 2012 – May 30, 2012 |
| 5 | Aggravated Sexual Abuse of a Minor | MV2 | April 1, 2012 – May 30, 2012 |
| 6 | Aggravated Sexual Abuse of a Minor | MV2 | May 1, 2012 – August 22, 2014 |
| 7 | Abusive Sexual Contact | MV2 | August 23, 2010 – August 22, 2014 |
| 8 | Sexual Abuse of a Minor | MV2 | August 1, 2015 – August 31, 2016 |
| 9 | Sexual Abuse of a Minor | MV2 | August 1, 2015 – August 31, 2016 |

## II. BACKGROUND AND SUMMARY OF EVIDENCE

The Government anticipates that the evidence at trial will show the following facts:

Between 2008 and 2016, Defendant Joseph Anthony Turrey sexually abused three of his daughters. Turrey is an enrolled member of the Lower Elwha Klallam Tribe, a former tribal council member, and a former Chief of Police for the Hoh Reservation. Turrey and his wife, Brenda Turrey[1], share nine children, including twins they adopted

---

[1] Family members will occasionally be referenced by their first name since their last names are the same. No disrespect is intended.

Government's Trial Brief - 2
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   who are currently 15 years old. In February 2016, Turrey moved out of the family home

2   following the revelation that he had been having an affair for over a year. Although

3   separated, Brenda and Turrey managed to maintain a cordial relationship, and he was

4   actively involved in the family's life.

5   On Saturday, September 25, 2021, Kelsie Gish and her younger sibling MV3[2]

6   (who is currently 22 years old and is an uncharged victim), were watching a movie at

7   Kelsi's house when they started discussing family dynamics.  During the conversation,

8   after a reference to another family member's childhood sexual abuse, MV3 disclosed that

9   their father, Joseph Turrey, sexually abused him when he was twelve years old during a

10  trip to Squaxin Island.[3]

11  In a later FBI interview, MV3 described sharing a hotel room with his father and

12  two of MV3's siblings while on Squaxin Island. During one of the nights, MV3 shared a

13  bed with Turrey, while MV3's two siblings shared the other bed. MV3 awoke to find that

14  Turrey had moved right up against him and had grabbed his vagina, squeezing it. MV3

15  indicated that Turrey touched him outside of his underwear, and possibly outside of his

16  pajamas. Turrey made "happy noises" during the incident, which lasted a few minutes.

17  Afterwards, Turrey told MV3 "I'm really sorry baby. You are beautiful. Don't let anyone

18  ever do that to you." MV3 was 12 years old at the time.

19  After Turrey moved out in 2016, MV3 told Brenda what happened. Brenda

20  confronted Turrey, who admitted to Brenda that he had touched MV3. Turrey told

21  Brenda that he was disgusted with himself and that he was sorry. Ultimately, the abuse

22  was not reported to law enforcement. During his law enforcement interview, MV3 said

23  that a few months before MV3's September 2021 disclosure to his family, Turrey had

24

25  [2] MV3 was born biologically female but now prefers male pronouns.

26  [3] The Squaxin Island Tribe is one of four Washington tribes who did not cede jurisdiction for
    felony offenses to the federal government. The investigation into MV3's sexual abuse has been

27  referred to the Mason County Prosecutor's Office.

Government's Trial Brief - 3
United States v. Joseph Turrey/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  apologized again to MV3 for what Turrey had done, saying that Turrey still felt bad about

2  it, and that "if anyone else ever did something like that to you or any of you girls, I would

3  go to prison for the things that I would do to them."

4      During his disclosure to Kelsie, MV3 mentioned that he believed that Turrey also

5  abused their 19-year-old sister (MV2). Kelsie and MV3 reached out to MV2 that night,

6  communicating with her over text and phone before driving to her then-boyfriend's house

7  to speak with her. MV2 confirmed that Turrey sexually abused her from the age of seven

8  until just before she turned fourteen. During her disclosure, MV2 sobbed hysterically and

9  threw up. She had consumed alcohol prior to Kelsie and MV3 coming over to talk to her.

10      During her FBI interview, MV2 described the almost seven years of sexual abuse

11  she endured, including both digital and penile rape and oral sex. For the first few years,

12  Turrey fondled and digitally penetrated MV2 (Counts 2 and 3). Turrey also sexually

13  abused MV2 during the same family outing to Squaxin Island in which he sexually

14  abused MV3.

15      Eventually, the fondling and digital penetration evolved into oral sex and

16  penile/vaginal intercourse. The first instance of penile rape occurred in 2012 at the Great

17  Wolf Lodge during a family celebration for MV3's birthday (Count 4). Turrey forced

18  MV2 to put his penis in her mouth during the Great Wolf Lodge rape as well (Count 5).

19  MV2 estimated at least seven to ten instances of vaginal rape at the family home on the

20  Lower Elwha Klallam Reservation. During her forensic interviews, MV2 gave detailed

21  accounts of specific instances of rape involving vaginal and oral penetration (Counts 6, 8

22  and 9). She also described Turrey making her use her hand to masturbate him until he

23  ejaculated one night in his bathroom (Count 7). Another sister will testify that she once

24  saw MV2 leaving Turrey's bathroom crying in the middle of the night.

25      Occasionally, MV2 resisted her father's advances. When this happened, Turrey

26  threatened to touch her younger sisters instead. MV2 recalled being ten years old the first

27

Government's Trial Brief - 4
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

time her father threatened to molest her younger sisters. Not wanting her sisters harmed, MV2 did what Turrey wanted. MV2 said the sexual abuse stopped when she was thirteen years old.

Following MV2's disclosure, Brenda called Turrey and confronted him on Sunday September 26, 2021. During their discussion, Turrey denied touching MV2, but again admitted to touching MV3. After this confrontation, Turrey started phoning his children. Les Turrey, the eldest son in the family, had been made aware of the sexual abuse by Kelsie. Les spoke with Turrey over the phone on Sunday and angrily confronted his father. Turrey again admitted to Les that he touched MV3, but denied any contact with MV2.

That same day, Kelsie spoke with each of her younger sisters individually. During their conversation, 14-year-old MV1 disclosed to Kelsie that their father sexually assaulted her when she was six or seven years old. During her forensic interview, MV1 described lying on a red blanket on her parents' bed watching television next to Turrey. As she lay there, Turrey placed his hand inside of her underwear and started "feeling" her bare vagina. Turrey rubbed her stomach with one hand and touched her vagina with his other hand. Although Turrey did not penetrate her vagina, he did apply pressure to it during the incident. MV1 felt "terrified" and said the abuse made her feel "really bad."

After that September weekend, Brenda initiated divorce proceedings and the children moved in with Kelsie. MV2 moved back in with Brenda in 2022.

Since the disclosures, MV1 and MV3 have at times been in counseling with a clinical psychologist, Dr. Steve Adelman. MV2 saw Dr. Adelman for a few months initially, but she stopped therapy in early 2022. When she was seeing Dr. Adelman, he gave her a test for dissociation and found that she dissociated frequently and that it is likely related to post-traumatic stress disorder. MV2 and her family have reported witnessing her dissociating, and have indicated that the episodes seemed to increase as

Government's Trial Brief - 5
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the trial date got closer. Though MV2 has trouble remembering what occurs while she dissociates, there is no evidence of which the government is aware that she has any abnormal memory issues related to the charged events.

### III. CHARGES AND RELEVANT LAW

*A.    Elements*

In order for Turrey to be found guilty of Aggravated Sexual Abuse of a Child, in violation of Title 18, United States Code, Section 2241(c), as charged in Count 1, the government must prove each of the following four elements beyond a reasonable doubt: *First*, the defendant is an Indian; *Second*, the defendant knowingly engaged in a sexual act with S.T.; *Third*, at the time of the sexual act, S.T. was under the age of twelve years old; and *Fourth*, the offense occurred in Indian Country.

For Count 1, "sexual act" means:
- the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2)(D).

In order for Turrey to be found guilty of Aggravated Sexual Abuse of a Child, in violation of Title 18, United States Code, Section 2241(c), as charged in Counts 2 through 6, the government must prove each of the following four elements beyond a reasonable doubt: *First*, the defendant is an Indian; *Second*, the defendant knowingly engaged in a sexual act with E.T.; *Third*, at the time of the sexual act, E.T. was under the age of twelve years old; and *Fourth*, the offense occurred in Indian Country.

For Count 2, "sexual act" means:
- the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2)(C).

For Count 3, "sexual act" means:

Government's Trial Brief - 6
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- the intentional touching, not through the clothing, of the genitalia of another person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246(2)(D).

For Counts 4 and 6, "sexual act" means:
- contact between the penis and the vulva, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

18 U.S.C. § 2246(2)(A).

For Count 5, "sexual act" means:

- contact between the mouth and the penis;

18 U.S.C. § 2246(2)(B).

In order for Turrey to be found guilty of Abusive Sexual Contact, in violation of Title 18, United States Code, Sections 2244(a)(5) and 2246(3), as charged in Count 7, the government must prove each of the following four elements beyond a reasonable doubt: *First*, the defendant is an Indian; *Second*, the defendant knowingly engaged in sexual contact with E.T.; *Third*, at the time of the sexual act, E.T. was under the age of twelve years old; *Fourth*, the offense occurred in Indian Country. For Count 7, "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. The intent at issue for the definition of "sexual contact" is the defendant's intent, not the victim's. *United States v. Sagg*, 125 F.3d 1294, 1295–96 (9th Cir. 1997).

In order for Turrey to be found guilty of Sexual Abuse of a Minor, in violation of Title 18, United States Code, Section 2243(a), as charged in Counts 8 and 9, the government must prove each of the following four elements beyond a reasonable doubt: *First*, the defendant is an Indian; *Second*, the defendant knowingly engaged in a sexual act with E.T.; *Third*, at the time of the sexual act, E.T. had reached the age of twelve

Government's Trial Brief - 7
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

years but had not reached the age of sixteen years, and was at least four years younger than the defendant; *Fourth*, the offense occurred in Indian Country.

For Count 8, "sexual act" means:
- contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

18 U.S.C. § 2246(2)(A).

For Count 9, "sexual act" means:
- contact between the mouth and the penis;

18 U.S.C. § 2246(2)(B).

For all nine counts, the government need not prove that the defendant knew the victim's age or that the defendant knew that the victim was at least four years younger than the defendant.

The evidence will establish each of the elements necessary to prove Turrey's guilt of these charges.

B.    *Penalties*

<u>Counts 1 through 6</u>: Imprisonment for not less than 30 years and up to life, a maximum fine of $250,000, a minimum of 5 years' supervised release and a maximum of a term of life, a $100 special assessment, and a $5,000 additional special assessment.[4]

<u>Count 7</u>: A maximum of up to life in prison, a maximum fine of $250,000, a minimum of 5 years' supervised release and a maximum of a term of life, a $100 special assessment, and a $5,000 additional special assessment.[5]

---

[4] 18 U.S.C. § 2241(c), 18 U.S.C. §3571(b)(3), 18 U.S.C. § 3583(k), 18 U.S.C. § 3013(a)(2)(A), 18 U.S.C. § 3014(a)(2).

[5] 18 U.S.C. § 2244(a)(5), 18 U.S.C. § 3571(b)(3), 18 U.S.C. § 3583(k), 18 U.S.C. § 3013(a)(2)(A), 18 U.S.C. § 3014(a)(2).

Government's Trial Brief - 8
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1     <u>Counts 8 and 9</u>: A maximum of 15 years in prison, a maximum fine of $250,000, a

2 minimum of 5 years' supervised release and a maximum of a term of life, a $100 special

3 assessment, and a $5,000 additional special assessment.[6]

### IV. TRIAL MATTERS

5 *A.   Estimated Length of Trial and Government Witnesses*

6     The government anticipates that its case-in-chief will last approximately four trial

7 days and expects to call between 10 and 15 witnesses. Federal Bureau of Investigation

8 Special Agent Ted Halla will be present at counsel table with government counsel. No

9 forfeiture trial is necessary.

10 *B.   Government Exhibits*

11     The government has identified its proposed trial exhibits in a separately filed

12 exhibit list.  The government's proposed exhibits consist largely of photographs, video

13 recordings, audio recordings, and transcripts.

14 *C.   Parties' Stipulations*

15    The parties have conferred and the defendant has agreed to stipulate to both the land

16 status of the alleged locations of the alleged assaults and to Turrey's Indian status.  The

17 parties will file such stipulations in advance of trial.

18 *D.  Jury Selection*

19     Due to the nature of the case, the government is seeking a larger jury pool be

20 brought for potential selection in this matter. Also, due to the sensitive nature of the case

21 the government has prepared a proposed Juror Questionnaire which will assist in

22 identifying jurors who may need to be excused or subjected to specialized questioning.

23 The government will confer with defense and submit the proposed questionnaire prior to

24 the pre-trial conference.

[6] 18 U.S.C. § 2243(a), 18 U.S.C. § 3571(b)(3), 18 U.S.C. § 3583(k), 18 U.S.C. § 3013(a)(2)(A), 18 U.S.C. § 3014(a)(2).

Government's Trial Brief - 9
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## V. EVIDENTIARY ISSUES

*A.     Jurisdiction and Indian Status*

The United States has jurisdiction, pursuant to Title 18, United States Code, Section 1153, over offenses under Title 18, United States Code, Section 113, when such offenses are committed by an Indian person within Indian Country, as defined by Section 1151 of Title 18, United States Code.[7] For all nine counts, whether the crime alleged occurred at a particular location is a question of fact. Whether the location is within the special maritime and territorial jurisdiction of the United States is a question of law. *See United States v. Mujahid*, 799 F.3d 1228, 1238 (9th Cir. 2015). The Court previously issued an order finding that 71 Snow Caps Lane, Port Angeles, Washington is within the Lower Elwha Klallam Reservation, and that that Reservation is within the territorial jurisdiction of the United States. Dkt. 39. The parties will enter a stipulation that the Lower Elwha Klallam Reservation and the same residence (Subject Property) are subject to the exclusive jurisdiction of the United States. The parties will also stipulate that the Great Wolf Lodge located at 20500 Old Hwy 99 SW, Centralia, Washington is within the territorial jurisdiction of the United States, and that events occurring at the Great Wolf Lodge are subject to the exclusive jurisdiction of the United States. The parties will also stipulate that Turrey is an Indian.

Pursuant to this Court's order at Dkt. 39, the government's proposed jury instructions require the jury to find that the sexual acts or contact occurred at 71 Snow Caps Lane or Great Wolf Lodge (as applicable by count), and then instruct the jury that those locations are within Indian Country.

*B.     Audio and Video Recorded Interviews*

---

[7] As noted above, defense counsel has stated that the defendant will stipulate to the fact that the property where the incident occurred is located within the Lower Elwha Klallam Indian Reservation. Pursuant to 18 U.S.C. § 1151, all "land within the limits of any Indian reservation under the jurisdiction of the United States government" is "Indian Country."

Government's Trial Brief - 10
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

MV1 was forensically interviewed by National Park Service Special Agent Susannah Lustig. MV2 was interviewed by Special Agent Halla and Special Agent Colleen Sanders. MV3 was interviewed by Special Agent Halla. All interviews were audio and video recorded and written transcripts were subsequently prepared. The government does not intend to introduce the recordings or transcripts as direct evidence during its case-in-chief. These interviews could, however, become relevant and admissible, in whole or in part, depending on how the defense cross-examines the witnesses or the statements made by defense counsel during opening statement, if the defense expressly or implicitly suggests that the victims fabricated their testimony, or to rehabilitate the victims' credibility on another ground. Under these circumstances, the recordings could be used as evidence of a prior consistent statement pursuant to Federal Rule of Evidence 801(d)(1)(B). *See United States v. Payne*, 944 F.2d 1458, 1470-71 (9th Cir. 1991); *Tome v. United States,* 115 S. Ct. 969 (1995). The recordings could also become relevant and admissible during the defense case-in-chief or on rebuttal, again to rebut an assertion by the defense that the prior statements were the product of suggestive questioning by family members or the forensic interviewer.  *See* Fed. R. Evid. 801(d)(1)(B).

The government will meet with the defense and discuss how and if the recording should be presented to the jury during trial.  The government may elect to offer the jury transcripts alongside the recording, or may synchronize the recording and transcript together.  If the government offers a transcript to the jury, the government will request that the Court give Ninth Circuit Model Instruction 2.6, which instructs the jury that the recordings themselves are the evidence, and the transcripts only a guide.  The Ninth Circuit has approved of the use of transcripts of properly admitted tape recordings to aid the jury in understanding the recordings.  *United States v. Turner*, 528 F.2d 143, 167-68 (9th Cir. 1975).  While the transcripts should not be sent back to the jury room, the

Government's Trial Brief - 11
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    transcripts may be provided to the jury if they request to have the tapes replayed during

2    deliberations.  Because the jury is instructed that the recordings control, the court is not

3    required to review the transcripts to determine their accuracy.  *United States v. Tisor*, 96

4    F.3d 370, 377 (9th Cir. 1996).

5    C.    *Expert Testimony*

6         The government is prepared to call three expert witnesses pursuant to Fed. R.

7    Evid. 702, and has provided prior notice to the defense of their identity and the subject

8    matter of their testimony. Specifically, the government plans to call Licensed

9    Independent Clinical Social Worker Phoebe Mulligan, Pediatric Nurse Practitioner

10   Michelle Breland, and Licensed Clinical Psychologist Steve Adelman.

11        In the *Daubert* decision, the Supreme Court adopted a flexible test for determining

12   whether to admit scientific expert testimony under Rule 702.  *Daubert v. Merrell Dow*

13   *Pharm., Inc.*, 509 U.S. 579, 588 (1993).  The Supreme Court later extended *Daubert* to

14   apply to "technical or other specialized knowledge." *Kumho Tire Co. v. Carmichael*, 526

15   U.S. 137, 147 (1999).  However, *Kumho Tire* rejected the proposition that the *Daubert*

16   factors should be rigidly applied, stating instead that those factors "may or may not be

17   pertinent in assessing reliability, depending on the nature of the issue, the expert's

18   particular expertise, and the subject of his testimony."  *Kumho*, 526 U.S. at 138.

19        While *Daubert* directs trial courts to serve as "gatekeepers" by excluding

20   testimony that is genuinely unreliable, the gatekeeper role "is not intended to serve as a

21   replacement for the adversary system."  Fed. R. Evid. 702 Adv. Comm. Notes (quoting

22   *United States v. 14.38 Acres of Land*, 167 F.3d 155 (5th Cir. 1996)).  Indeed, *Daubert*

23   itself made clear that "vigorous cross examination, presentation of contrary evidence, and

24   careful instruction on the burden of proof are the traditional and appropriate means of

25   attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.  Further, the Ninth

26

27

Government's Trial Brief - 12
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Circuit has stated that Rule 702 should be "construed liberally," as a rule of inclusion and not of exclusion.

An expert witness is not limited to providing opinion testimony.  To the contrary, Rule 702 expressly provides that an expert "may testify in the form of an opinion *or otherwise*." (Emphasis added); *see* Rule 7 Adv. Comm. Notes (noting that "the assumption that experts testify only in the form of opinions" is "logically unfounded," and that "an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case" without testifying in the form of an opinion).  Much of the government's expert testimony will consist of experts explaining technical issues, but not necessarily in the form of an opinion.

Each of the government's three expert witnesses are experts in their fields, and the government submits that the testimony of each will meet the requirements set forth in Rule 702.

Ms. Mulligan's testimony will assist the jury in understanding delayed disclosure of sexual abuse. Ms. Mulligan works as a mental health/trauma therapist treating victims of childhood sexual abuse. She will describe for the jury her experience with delayed disclosure and will identify common reasons for this phenomenon. Ms. Arnold will not offer an opinion as to why these specific victims did not immediately disclose their abuse.

Ms. Breland's testimony will assist the jury in understanding the rarity of physical injury from past childhood sexual assaults and medical reasons for that fact. This will assist the jury in understanding why medical examinations of the victims were not done in this case, though Ms. Breland will not offer an opinion related to the specific victims in this case.

Dr. Adelman's testimony will assist the jury in understanding what dissociation is, how it is triggered, and how it can be linked to post traumatic stress disorder. Dr.

Government's Trial Brief - 13
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Adelman has had a long career as a mental health/trauma psychologist treating victims of childhood sexual abuse, and he is the therapist who gave MV2 a psychological test related to dissociation. Dr. Adelman will be testifying as a fact witness related to MV2 as well as an expert. Though Dr. Adelman also treats MV1 and MV3, the government does not anticipate eliciting testimony related to their treatment. If either party believes that such information has become relevant during trial, the government requests that the Court hear from the parties outside the presence of the jury, prior to either party inquiring with Dr. Adelman, due to the protected nature of mental health treatment information. *See, e.g.,* Health Insurance Portability and Accountability Act of 1996 (HIPAA).

D.   *Character of the Government's Witnesses*

Federal Rule of Evidence 608 governs the admissibility of character evidence relating to a witness's character for truthfulness or untruthfulness.  That Rule states, in relevant part:

> **(b) Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
> (1) the witness; or
> (2) another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b).

Under Rule 608, Turrey may not introduce "extrinsic evidence" of any specific instances of conduct of the victims (or other witnesses), *even if* those specific instances of conduct would bear on the "witness's character for truthfulness." *Id.*  Extrinsic evidence means any evidence "adduced by means other than cross examination of the witness." Black's Law Dictionary 700 (11th ed. 2019).  The reason for this bar on extrinsic evidence is simple.  "The admission of extrinsic evidence of specific instances of a witness' conduct to impeach the witness' credibility may confuse the jury, unfairly

embarrass the victim, surprise the prosecution, and unduly prolong the trial." *Nevada v. Jackson*, 569 U.S. 505, 511 (2013).

"Only in limited circumstances, the 'court may, on cross examination,' allow such specific instances 'to be inquired into if they are probative of the character for ... untruthfulness' of the witness or a character witness." *United States v. Meintzschel*, 538 F. Supp. 3d 571, 583 (E.D.N.C. 2021) (quoting Fed. R. Evid. 608(b)).  Even during cross-examination, Turrey cannot introduce or refer to external documents relating to specific instances of conduct; he may only ask questions about those instances of conduct.  *See, e.g.*, *United States v. Olivo*, 80 F.3d 1466, 1471 (10th Cir. 1996) (noting that referring to documents on cross-examination is error under Rule 608(b), but that "cross-examination questions alone are not extrinsic evidence.").

Thus, at most, Turrey may inquire about, e.g., a victim's specific instances of conduct only during cross-examination of either that victim or of another witness that has testified about the victim's character for truthfulness.  Fed. R. Evid. 608(b).  Turrey must first convince the Court that the specific instances would be "probative of the character for truthfulness or untruthfulness" of the witness.  *Id.*  Rule 608(b) is "worded 'to ensure that it would be restrictively interpreted by district courts.'" *Meintzschel*, 538 F. Supp. 3d at 583 (quoting *United States v. Piche*, 981 F.2d 706, 714 (4th Cir. 1992)).  And any inquiries into specific instances of conduct on cross-examination must also satisfy Rule 403's prohibition on evidence whose probative value is substantially outweighed by a danger of "confusing the issues, misleading the jury, undue delay," or "wasting time." Fed. R. Evid. 403.  *See United States v. Geston*, 299 F.3d 1130, 1137 n.2 (9th Cir. 2002).

As a result of those restrictions, in general, when a defendant can point only to "'mere accusations,' rather than *findings*, of 'misconduct based on untruthfulness,'" those accusations are often inadmissible even on cross-examination.  *United States v. Harris*, 551 F. App'x 699, 706 (4th Cir. 2014) (unpublished) (internal citation omitted).  "Mere

Government's Trial Brief - 15
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

accusations of prior misconduct inherently have little probative value.  They are, after all, 'both unproven and unconnected to th[e] [instant] case.'"  *Id.* (quoting *United States v. Custis,* 988 F.2d 1355, 1359 (4th Cir. 1993)).  They also tend to result in mini-trials about these separate incidents.  The government may therefore move *in limine* to preclude Turrey from inquiring about certain specific instances of conduct of some of the victims or witnesses in this case.

Finally, if he is permitted to inquire about those specific instances of conduct, Turrey will be stuck with the witness's or victim's answer on cross-examination.  *United States v. Herzberg*, 558 F.2d 1219, 1223 (5th Cir. 1977) (under Rule 608, "[t]he cross-examining attorney must take the witness' answer.").  Thus, whatever answer the victim or witness provides, Turrey will not be permitted to introduce other extrinsic evidence to challenge what the witness said about the specific instances of conduct.

E.     *Evidence of the Defendant's Character*

Neither the Defendant's character nor any trait of the Defendant's character is an essential element of the crimes charged in the Second Superseding Indictment. Thus, the defense may not introduce any evidence of specific instances of conduct (e.g. awards, commendations, lack of previous sex offense charges) that would reflect favorably on the Defendant.  *United States v. Soloman*, 686 F.2d 863, 873-74 (11th Cir. 1982) (disallowing, inter alia, questions re: family and military service). In the event that the Defendant attempts to call character witnesses to testify on his behalf, the Government will seek leave to provide additional briefing and argument on this issue.

F.     *Hearsay*

Hearsay issues may arise at trial. A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3) is offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Many out of court statements are not hearsay because they either are not assertions, or they are not offered to prove the truth of the matter asserted. *United States*

Government's Trial Brief - 16
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 *v. Oguns*, 921 F.2d 442, 449 (2nd Cir. 1990) (questions are not assertions and are thus not

2 hearsay). Furthermore, many statements that meet the definition of hearsay are

3 admissible under one or more of the many exceptions to the hearsay rule.

4     1.    <u>Statements Offered for a Non-Hearsay Purpose</u>

5     In some cases, the government may offer out of court statements not to prove the

6 truth of the matters asserted, but merely to explain the subsequent actions of the law

7 enforcement agents. Therefore, the statements would not constitute "hearsay" within the

8 definition of Fed. R. Evid. 801. *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995)

9 (informant's part of conversation with agent was not hearsay, because it was offered for

10 context and not to prove the truth of the informant's statements); *United States v. Lowe*,

11 767 F.2d 1052, 1063-64 (4th Cir. 1985) (agent's testimony regarding information he

12 received from third party was not hearsay, since it was offered to explain the preparations

13 agents took in anticipation of the accused's arrest). Similarly, a statement offered to show

14 the speaker's state of mind, or to show the effect of the statement on the listener, is not

15 hearsay because it is relevant regardless of its truth. Additionally, the government may

16 offer other out-of-court statements not to prove the truth of the matters asserted, but

17 instead as present sense impressions, excited utterances, or statements of the victim's

18 then-existing mental, emotional, or physical condition, all of which are exceptions to the

19 rule precluding hearsay.

20     2.    <u>The Victims' Prior Consistent Statements, Rule 801(d)(1)(B).</u>

21     A witness's prior consistent statements are admissible for their truth, pursuant to

22 Fed. R. Evid. 801(d)(1)(B)(ii), when necessary to rebut attacks on the witness's

23 credibility. Turrey has made it clear that he will attempt to attack each victim's credibility

24 through their cross-examinations and the testimony of other witnesses. In response to

25 such attacks, and in accordance with Rule 801(d)(1)(B)(ii), the prior consistent

26

27

Government's Trial Brief - 17
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

statements of each victim are not hearsay and are admissible. Rule 801(d)(1)(B) provides

that statements satisfying the following conditions are not hearsay:

> The declarant testifies and is subject to cross-examination abut a prior
> statemen, and the statement . . . is consistent with the declarant's testimony
> and is offered (i) to rebut an express or implied charge that the declarant
> recently fabricated it or acted from a recent improper influence or motive in
> so testifying; or (ii) to rehabilitate the declarant's credibility as a witness
> when attacked on another ground.

Fed. R. Evid. 801(d)(1)(B).

Prior to a 2014 amendment to Rule 801(d)(1)(B), only prior consistent statements

offered to rebut charges of recent fabrication or improper motive were substantively

admissible. However, with the addition of subpart (ii), consistent statements that rebut

other attacks on a witness, for example, "charges of inconsistency or faulty memory"

may be given substantive effect by the jury. *United States v. Wilkinson,* No. 1:14-CR-

BLW-1, 2015 WL 6182466 at *12 (D. Idaho Oct. 21 (2015) (*citing* Fed. R. Evid. 801 Ad.

Comm. Notes).

In this case, the defense may attempt to attack each victim's credibility during

cross-examination based on alleged inconsistencies in their statements or inferences that

each had a motive to lie regarding the sexual assaults. If that occurs, the government

should be permitted to rehabilitate each victim's credibility through their prior statements

about what occurred (through the testimony of witnesses and/or recordings of the

statements), because the probative value of their prior statements outweighs any danger

of unfair prejudice. *See Wilkinson,* 2015 WL 6182466 at *12 ("[i]f the defense attacks the

credibility of H.H. on cross examination, which is likely, then the Court will be inclined

to admit the portion of the interview that would rehabilitate H.H's credibility"); *United

States v. Payne,* 944 F.2d 1458, 1471 (9th Cir. 1991) (prior consistent statements had

"significant probative force bearing on credibility apart from mere repetition" because the

statements "demonstrated that [the witness] had repeated certain aspects of her

story . . . .").

    3.   <u>Self-Serving Statements of the Defendant</u>

Government's Trial Brief - 18
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

A defendant cannot elicit evidence of his own statements to law enforcement and others. Federal Rule of Evidence 801(d)(2) is unavailable to Turrey because he is the proponent of the evidence and, where he seeks to introduce it, it is not offered against him. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). As a result, the hearsay rule would bar Turrey from introducing evidence of his own prior statements. *United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007). If Turrey wants the jury to hear from him, he must take the stand and testify under oath and subject to cross-examination.

Such statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). The Government intends to offer statements Turrey made to Brenda Turrey, Les Turrey, and MV3. Following MV3's disclosure to her mother, Brenda confronted Turrey, who admitted to sexually assaulting MV3. Turrey made a similar disclosure to Les on September 26, 2021. Finally, a few months prior to September 2021, Turrey apologized to MV3 for sexually assaulting her. All three statements are admissible as admissions of a defendant offered by the government against the speaker.

G.     *Charts and Summaries*

The government may seek to introduce a summary chart of the counts in the Second Superseding Indictment that includes the count, date, and ages of the victims. The government intends to have Special Agent Halla testify to his review of the records and Second Superseding Indictment.  The government may also prepare an illustrative summary timeline with the alleged dates of the offenses and the victims' ages.

It is well-established that the trial Court in its discretion may allow the presentation of summary evidence to guide and assist the Jury in understanding and judging the factual controversy. See, Fed. R. Evid. 1006; *United States v. Skalicky*, 615 F.2d 1117, 1120-21 (5th Cir. 1980); *United States v. Cooper*, 464 F.2d 648, 656 (10th Cir. 1972). A foundation for the admission of each chart and summary will be laid through the testimony of various witnesses, who will testify that the charts and summaries accurately reflect information contained in prior testimony or in documents

Government's Trial Brief - 19
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

already in or to be admitted into evidence. See *United States v. Lemire*, 720 F.2d 1327, 1349 (D.C. Cir. 1983); *United States v. Pollack*, 417 F.2d 240, 241 (5th Cir. 1969).G.

H.     *Cross-Examination of the Defendant*

A Defendant who testifies at his trial may be cross examined as to all matters reasonably related to the issues he puts in dispute during cross examination. A Defendant has no right to avoid cross examination on matters which call into question his claim of innocence. *United States v. Miranda Uriarte*, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

## VI.  RECIPROCAL DISCOVERY

To date, the government has provided approximately 1,000 pages of discovery to the defense. Since the inception of this prosecution, the United States has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the government has control or custody. The United States has not received any reciprocal discovery from the defense and will seek to exclude any offered during trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure. Additionally, except for the now-withdrawn defense expert Dr. Reisberg, the defense has not provided the government with any "written summary of any [expert] testimony that the defendant intends to use . . . as evidence at trial," as required by Fed. R. Crim. P. 16(b)(1)(C).  Therefore, the government will seek to exclude any testimony by a defense witness that falls outside the scope of what constitutes lay testimony under Rule 701.

Government's Trial Brief - 20
*United States v. Joseph Turrey*/CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

**VII. CONCLUSION**

2

This trial brief is intended to familiarize the Court with the government's case and

3

evidentiary issues related to the trial presentation. The government will supplement this

4

brief as necessary if additional issues arise.

5

6

DATED this 3rd day of January, 2023.

7

Respectfully submitted,

8

NICHOLAS W. BROWN
United States Attorney

9

10

*s/ Kristine Foerster*
KRISTINE FOERSTER

11

WILLIAM DREHER

12

Assistant United States Attorneys
United States Attorney's Office

13

1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Government's Trial Brief - 21
*United States v. Joseph Turrey/*CR21-5385BHS

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800